IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL TROUP,

      Plaintiff,                   No. 2:10-cv-3109 GEB AC P

   vs.

CHRISTOPHER SMITH, et al.,

      Defendants.            <u>FINDINGS & RECOMMENDATIONS</u>

/

       Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court is defendant Dr. Craig Lovett's May 23, 2012 motion for summary judgment, which plaintiff opposes. On review of the motion, the documents filed in support and opposition, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

FACTS[1]

       At all times relevant to this action, plaintiff was incarcerated at Mule Creek State Prison ("MCSP"). Compl. ¶ 2. Craig Lovett is a board certified orthopaedic surgeon in practice

---

[1] All facts are undisputed unless noted otherwise.

1

since 1985 and employed by the California Department of Corrections and Rehabilitation as a contract physician and surgeon at MCSP from 2007 to 2011. Lovett Decl. ¶ 1.

On February 25, 2009, plaintiff injured his right index finger while working n the MCSP meat plant. Compl. ¶ 3; Def.'s Mot. for Summ. J., Ex. B (Lovett 0013, 0016); Troup Dep. 15:8-9. That day, plaintiff was seen at the MCSP Triage and Treatment Area by Dr. Jalal Soltanian, who ordered an x-ray of plaintiff's finger. Compl. ¶¶ 3-4; Def.'s Mot. for Summ. J., Ex. B (Lovett 0013[2]). On the radiology report, it was concluded that there may be a "fracture of a benign entity such as a bone cyst." Def.'s Mot. for Summ. J., Ex. B (Lovett 0018). Following examination of plaintiff's finger, Dr. Soltanian prescribed 800 mg of ibuprofen for plaintiff's pain, ordered a follow-up appointment in two days, and referred plaintiff to Dr. Lovett for consultation. Id. (Lovett 0013, 0019).

On March 6, 2009, plaintiff was seen by Dr. Alvin Zachariah for a follow-up appointment. Def.'s Mot. for Summ. J., Ex. C (Lovett 0026). Dr. Zachariah thereafter submitted a Physician Request for Services ("PRS") form for a referral to "ortho" for a "routine" appointment and scheduled a follow-up appointment in two weeks. Id. (Lovett 0028). The PRS was approved on March 10, 2009. Id.

Also on March 10, 2009, a second x-ray was taken of plaintiff's finger. Def.'s Mot. for Summ. J., Ex. D (Lovett 0027). Comparing this x-ray with the one taken on February 25, 2009, it was determined that there was "little or no change" since the injury occurred, although "[t]he fracture of the cystic structure is more appropriately seen at the present time." Id.

On March 20, 2009, plaintiff was seen for a follow-up appointment by physician's assistant Karen Todd. Def.'s Mot. for Summ. J. (Lovett 0029). During this

---

[2] The exhibits attached to defendant's motion for summary judgment are identified both by an exhibit number and a numbering system (e.g., "Lovett 0013"). For ease of reference, the undersigned includes both identifiers when citing to exhibits.

2

1 appointment, Todd discussed the March 10, 2009 x-ray results with plaintiff, noted that a PRS

2 form was "generated to ortho," and scheduled a follow-up appointment in thirty days.  Id.  Todd

3 also refilled plaintiff's ibuprofen medication.  Id. (Lovett 0030-31).

4        On April 23, 2009, plaintiff was again seen by Todd for a follow-up appointment.

5 Compl. ¶ 7.  Todd again noted that there was a PRS for ortho, refilled plaintiff's ibuprofen

6 medication, and ordered another follow-up appointment.  Def.'s Mot. for Summ. J., Ex. E

7 (Lovett 0032-34).

8        On April 30, 2009, plaintiff was seen by Dr. Lovett.  Def.'s Mot. for Summ. J.,

9 Ex. F (Lovett 0038).  Dr. Lovett indicated on the Health Record Report following this visit that

10 both the February and March x-rays of plaintiff's finger "noted a cystic lesion involving the

11 proximal radial aspect of the right index finger.  He unfortunately has gone onto a fix

12 boutonniere deformity[3], -50 degrees with a severe hyperextension deformity of the DIP[4] joint."

13 Id.  Plaintiff stated that he could "live with the boutonniere deformity, but the unstable DIP joint

14 [was] not acceptable to him" because it "creates problems with his work, wearing gloves, etc."

15 Id.; Lovett Decl. ¶ 10.  Following a physical examination of plaintiff, Dr. Lovett recommended

16 "open repair of [plaintiff's] boutonniere deformity."  Def.'s Mot. for Summ. J., Ex. F (Lovett

17 0038).  He also determined that plaintiff would benefit from a DIP fusion[5], which was plaintiff's

18 "chief concern."  Id.  This procedure would have fused the DIP joint and allowed plaintiff to be

19 able to grasp objections with his thumb and index finger without the DIP joint hyperextending.

20 Lovett Decl. ¶ 11.  Dr. Lovett noted that "[t]his will be lined up pending authorization."  Def.'s

---

[3] A boutanniere deformity occurs when a tear in the tendon sheath, which looks like a buttonhole, causes the finger to be bent down at the middle joint and bent back at the end joint. Lovett Decl. ¶ 9.

[4] The DIP joint refers to the distal interphalangeal joint, the joint closest to the fingertip. Lovett Decl. ¶ 9.

[5] A DIP fusion fuses the DIP joint together in a straight position with buried wires or screws.  Lovett Decl. ¶ 10.

Mot. for Summ. J., Ex. F (Lovett 0038).  Dr. Lovett was willing to perform the DIP fusion, but was unwilling to perform the open repair of the boutonniere deformity because it was more complex and not his speciality.  Lovett Decl. ¶¶ 11-12.  Plaintiff concedes that Dr. Lovett's recommendation for surgery for the boutonniere deformity was correct.  Troup Dep. 38:20-23.

Following this appointment, Dr. Lovett submitted to Dr. Smith, MCSP's Chief Physician and Surgeon, a PRS form for a "routine" surgery to perform the DIP fusion, noting that plaintiff's finger was "severe" and "fixed" with a "deformity."  Lovett Decl. ¶ 13; Def.'s Mot. for Summ. J., Ex. G (Lovett 0036).  This RPS was approved on May 5, 2009.  Def.'s Mot. for Summ. J., Ex. G (Lovett 0036).

Dr. Lovett does not recall having received the RPS authorization.  Lovett Decl. ¶ 14.  If Dr. Lovett had received the authorization, his office would have promptly scheduled the procedure for a date 2-3 weeks thereafter, which was his usual practice.  Id.  Instead, in late-July or early-August, Dr. Lovett became aware that the DIP fusion procedure had been approved when a scheduling nurse at MCSP showed him a list of approved surgeries during one of Dr. Lovett's monthly on-site consultation visits to the prison.  Lovett Decl. ¶ 15.  Once Dr. Lovett became aware that the DIP fusion procedure had been approved, he decided it was inappropriate to perform the procedure without another consultation in light of the amount of time that had passed since his April 30, 2009 examination of plaintiff.  Id. ¶ 16.  Although Dr. Lovett believed that a DIP fusion was still possible, he determined that it was medically appropriate to obtain a second opinion.  Id.

On August 28, 2009, Dr. Lovett's office contacted MCSP to cancel the DIP fusion procedure and refer plaintiff to the hand surgery department at the University of California at Davis ("UC Davis") for an evaluation and treatment recommendation.  Def.'s Mot. for Summ. J., Ex. H (Lovett 0037); Lovett Decl. ¶¶ 16-17.  Dr. Lovett's plan was to perform the fusion procedure if the hand specialist at UC Davis determined that it was still appropriate.  Lovett Decl. ¶ 16.  Otherwise, Dr. Lovett intended to refer plaintiff to the specialist if a more

4

complex procedure was recommended. Id.

Dr. Lovett's referral to UC Davis was redirected to San Joaquin General Hospital ("SJGH"), where an appointment was scheduled for October 23, 2009. Def.'s Mot. for Summ. J., Ex. H.

On October 23, 2009, plaintiff was seen at SJGH by Dr. Carmelino Galang. Def.'s Mot. for Summ. J., Ex. I (Lovett 0059-60). At this time, Dr. Galang advised plaintiff that it was too late to repair his finger and that he could either live with the permanent deformity or have the two knuckles on that finger amputated. Compl. ¶ 15; Troup Dep. 54:3-5. Living with the deformity would have made it necessary for plaintiff to take ibuprofen regularly, which plaintiff found to be ineffective. Troup Dep. 55:15-22; 57:13-21. Plaintiff therefore chose amputation. Id.

On May 13, 2010, plaintiff's finger was partially amputated at SJGH. Def.'s Mot. for Summ. J., Ex. J.

## LEGAL STANDARDS

Summary judgment is appropriate when it is demonstrated that there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id., at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id., at 323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

In applying these rules, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

## DISCUSSION

Dr. Lovett seeks summary judgment on the ground that he was not deliberately indifferent to plaintiff's medical needs under the Eighth Amendment. The basis of plaintiff's claim is that Dr. Lovett violated plaintiff's constitutional rights when he (1) labeled the surgery as "routine" instead of "urgent"; (2) canceled the DIP fusion surgery on August 28, 2009; and (3) scheduled a surgery that he claimed was too difficult for him to perform in the first place.

The Eighth Amendment proscription against cruel and unusual punishment encompasses the government's obligation to provide adequate medical care to those whom it is punishing by incarceration. See Estelle v. Gamble, 429 U.S. 97, 103 (1976). In order to establish an Eighth Amendment claim based on inadequate medical care, plaintiff must show that the defendant was deliberately indifferent to his serious medical needs. See Helling v.

7

McKinney, 509 U.S. 25, 32 (1993); Estelle, 429 U.S. at 106; McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997). Deliberate indifference to the serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. See McKinney, 509 U.S. at 32; Estelle, 429 U.S. at 104; McGuckin, 974 F.2d at 1059.

A "serious" medical need arises if the failure to treat the plaintiff could result in further significant injury or the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104; McGuckin, 974 F.2d at 1059.

Deliberate indifference may be manifested by the intentional denial, delay or interference with the plaintiff's medical care, or by the manner in which the medical care was provided. See Estelle, 429 U.S. at 104-05; McGuckin, 974 F.2d at 1059. However, the defendant must purposefully ignore or fail to respond to the plaintiff's pain or medical needs. See McGuckin, 974 F.2d at 1060. Thus, neither an inadvertent failure to provide adequate medical care, nor mere negligence or medical malpractice, nor a mere delay in medical care (without more), nor a difference of opinion over proper medical treatment, is sufficient to constitute an Eighth Amendment violation. See, e.g., Estelle, 429 U.S. at 105-06; Toguchi v. Chung, 391 F.3d 1051, 1058-60 (9th Cir. 2004): Jackson v. Mcintosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v.Vild, 891 F.2d 240, 242 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Commissioners, 766 F.2d 404, 407 (9th Cir. 1984). Moreover, the Eighth Amendment does not require optimal medical care or even medical care that comports with the community standard of medical care. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." See Estelle, 429 U.S. at 106: see also, e.g., Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin, 974 F.2d at 1050; Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980). Even gross negligence is insufficient to

8

establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Plaintiff first asserts that Dr. Lovett violated his constitutional rights when Dr. Lovett failed to label the DIP fusion surgery as "urgent" rather than "routine," which would have had the effect of immediate medical care for plaintiff's finger. This argument fails because a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez, 891 F.2d at 242. Even assuming, however, that this claim could proceed, the undisputed facts show that the injury to plaintiff's finger was not urgent according to Dr. Lovett because surgery remained a possibility not only two months after the incident, when Dr. Lovett first examined plaintiff, but also six months after the incident, when Dr. Lovett believed that the DIP fusion surgery may still have been possible. Lovett Decl. ¶ 16. Nothing in the record suggested an emergency, and any negligence on Dr. Lovett's part in failing to anticipate the possible consequences of delay cannot support relief. See Estelle, 429 U.S. at 106.

Plaintiff next asserts that his constitutional rights were violated when Dr. Lovett canceled the DIP fusion surgery on August 28, 2009. See Troup Dep. 68:10-13. At the outset, the court notes that there is no evidence that the DIP fusion surgery was ever scheduled. Indeed, the record establishes that Dr. Lovett did not schedule the surgery because he was unaware that his PRS form was approved. Construing this assertion then as a challenge to Dr. Lovett's decision to *not* schedule a surgery on August 28, 2009 and instead refer plaintiff to a hand specialist at UC Davis, the court finds no evidence of deliberate indifference. As discussed supra, to show deliberate indifference, plaintiff must show an intentional denial, delay or interference with his medical care. Plaintiff here has not alleged or submitted any evidence that Dr. Lovett timely received the PRS approval of the DIP fusion surgery; that he intentionally ignored the approval, which led to a delay in treatment; and that this delay in treatment resulted in rendering future surgeries impossible, leading to the partial amputation of plaintiff's finger. Rather, the undisputed facts show only that Dr. Lovett examined plaintiff on April 30, 2009; that

he immediately submitted a PRS form for authorization to perform a DIP fusion surgery; that he did not receive notification that the surgery was approved by MCSP until late-July or early-August; and that once he did eventually learn that the surgery had in fact been approved, he referred plaintiff to a hand specialist at UC Davis for a second opinion due to the amount of time that had passed since his initial request. There is no deliberate indifference on these facts.

Finally, plaintiff opposes the instant motion on the ground that Dr. Lovett should not have scheduled the surgery in the first place if he deemed it too difficult to perform. Again, this argument fails. The undisputed facts show that plaintiff suffered from a boutanniere deformity and an unstable DIP joint. Dr. Lovett's notes and his declaration submitted here indicate that he was willing to perform the DIP fusion surgery to correct the unstable joint, but was unwilling to perform surgery to correct the boutanniere deformity because it was not his specialty. After receiving notice of the approval of his PRS form months after first submitting it, Dr. Lovett decided that it was medically appropriate to obtain a second opinion from a hand specialist before proceeding with the DIP fusion because of the amount of time that had lapsed since his initial recommendation. Plaintiff has submitted no evidence that this was medically inappropriate.

Accordingly, IT IS HEREBY RECOMMENDED that defendant Dr. Lovett's April 23, 2012 motion for summary judgment be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-eight days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the

////

////

10

District Court's order.  <u>Martinez v. Ylst</u>, 95 1 F.2d 1153 (9th Cir. 1991).

DATED: March 1, 2013.

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/mb;trou3109.msj