UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL TROUP,<br><br>          Plaintiff,<br><br>     v.<br><br>CHRISTOPHER SMITH, et al.,<br><br>          Defendants. | No.  10-cv-3109 TLN AC P<br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  On April 15, 2013, defendant Dr. Craig Lovett's motion for summary judgment was granted.  ECF No. 67 (Order adopting Findings and Recommendations at ECF No. 65).  Presently pending before the court is the motion for summary judgment brought separately by the remaining five defendants, and opposed by plaintiff.  After careful consideration of the motion, the documents filed in support and opposition, the court finds that the motion should be granted and judgment entered for defendants.

FACTS

This case involves the medical care provided to plaintiff following an injury to his right index finger in 2009.  The facts have been previously detailed in the Findings and Recommendations filed on April 1, 2013.  ECF No. 65 at 1-5.  The facts pertinent to the defendants other than Dr. Lovett are as follows:

1

- Defendant Dr. Jalal Soltanian-Zadeh has been employed by CDCR[1] since 2007 and is (and was at the relevant period) a staff physician and surgeon at Mule Creek State Prison (MCSP). Motion for Summary Judgment (MSJ), ECF No. 51-2, Exhibit B, Declaration of J. Soltanian-Zadeh (hereafter, Soltanian) ¶ 1.
- Defendant Dr. A. Zachariah, worked as a staff physician and surgeon at MCSP from December of 2008 until June of 2009.[2] MSJ, ECF No. 51-2, Declaration of A. Zachariah, Ex. C ¶ 2.
- Defendant K. Todd has been employed by CDCR since 2001 and at present (and for the relevant period) worked as a physician's assistant at MCSP. MSJ, ECF No. 51-2, Declaration of Todd, Ex. D ¶ 1.
- Defendant Dr. C. Smith has for the CDCR for 21 years and is currently (and for the relevant period) Chief Physician and Surgeon at MCSP.[3] MSJ, ECF No. 51-2, Declaration of C. Smith, Ex. E ¶ 1.
- Defendant Dr. S. Heatley has worked for CDCR since about 2008 and is currently (and was at the relevant time) Chief Medical Executive at MCSP. MSJ, ECF No. 51-2, Declaration of S. Heatley, Ex. F ¶ 1.
- Plaintiff, an inmate incarcerated at MCSP during the relevant time, injured his right index finger on February 25, 2009, while working in the MCSP meat plant. Complaint, ECF No. 1, at 5[4]; plaintiff's deposition at 15:8-12; plaintiff's Declaration in Opposition, ECF No. 57; MSJ, Heatley Dec. ¶3.[5]

////

////

---

[1] California Department of Corrections and Rehabilitation.
[2] Defendant Zachariah actually declares that he worked at MCSP "from December 2008 to June 2008," obviously a typographical error. Zachariah Dec. ¶ 2.
[3] Among defendants' statement of undisputed facts, it is asserted that defendant Smith has been Chief Physician and Surgeon at MCSP since May of 2003, but this defendant does not make that specific statement in his declaration.
[4] The court references the pagination of its electronic docketing system.
[5] See also, ECF No. 65 at 2.

2

- Defendant Soltanian examined plaintiff's injured finger the same day in Triage and Treatment Assessment (TTA) and ordered x-rays. Compl. at 5; MSJ, Soltanian Dec. ¶¶ 3-4.[6]
- Defendant Soltanian determined that the x-rays suggested a possible chip fracture. MSJ, Soltanian Dec. at ¶ 3; MSJ, Heatley Dec. ¶ 4.
- Defendant Soltanian was unable to determine whether the deformity of the swollen finger was new or arose from a prior injury; he suspected dislocation but was unsuccessful in his efforts to reduce the deformity by pushing on the finger. Compl. at 5; MSJ, Soltanian Dec. at ¶ 5; MSJ, Heatley Dec. ¶ 4.
- Defendant Soltanian was unsuccessful in his attempt to provide a consultation with the in-house orthopedist, Dr. Lovett. MSJ, Soltanian Dec. at ¶ 7; MSJ, Heatley Dec. ¶ 4.
- Defendant Soltanian's assessment was a right index finger injury in stable condition with a possible chronic deformity and swelling; he ordered TTA follow-up and for the x-ray(s) to be sent to the orthopedist. MSJ, Soltanian Dec. ¶¶ 6-8; MSJ, Heatley Dec. ¶ 4; Compl. at 5.
- Defendant Soltanian splinted and wrapped the finger; for the pain and to reduce inflammation, Dr. Soltanian prescribed 800 mg of ibuprofen to be taken three times. MSJ, Soltanian Dec. ¶¶ 9; MSJ, Heatley Dec. ¶ 4.
- Defendant Soltanian had no further involvement in the care of plaintiff's right index finger injury. MSJ, Soltanian Dec. ¶ 10.
- Plaintiff was next seen on March 6, 2009, by defendant Dr. Zachariah in the "C" yard clinic in relation to a follow-up of an x-ray of his right index finger. Compl. at 5; MSJ, Soltanian Dec. at ¶ 4; MSJ, Heatley Dec. ¶ 5.
- Defendant Zachariah's physical examination revealed a swollen right index finger with 30 degree angulation at the PIP joint; he assessed the injury as a right index finger fracture with deformity of -30 degrees at the PIP joint. MSJ, Zachariah Dec. ¶¶ 4-5.

---

[6] See also, ECF No. 65 at 2.

- Defendant Zachariah ordered x-rays of plaintiff's right index finger to be taken within a week, wrote a Physician Request for Services (hereafter, RFS) for an outpatient initial orthopedic consultation, renewed plaintiff's ibuprofen prescription and told plaintiff to follow up in regard to the x-rays within two weeks.  MSJ, Zachariah Dec. ¶ 6.
- On March 10, 2009, defendant Smith, in his capacity as chief physician and surgeon, approved defendant Zachariah's RFS.  MSJ, Smith Dec. ¶ 4; MSJ, Heatley Dec. ¶5.
- Also on March 10, 2009, the x-rays ordered by defendant Zachariah were taken, revealing a fracture of a benign bone cyst; when Dr. Zachariah received the results on March 19, 2009, he ducated plaintiff to review results with medical staff.  MSJ, Zachariah Dec. ¶ 7-8.
- Plaintiff was scheduled for a follow-up appointment on March 20, 2009.  Compl. at 5.
- Defendant Zachariah had no further involvement in the care and treatment of plaintiff's finger injury.[7]  MSJ, Zachariah Dec. ¶ 10.
- On March 20, 2009, plaintiff was seen in the yard clinic by defendant Todd, advised of the x-ray results and of the status of the RFS for orthopedic referral.  Compl. at 5; MSJ, Todd Dec. ¶ 3;  MSJ, Heatley Dec. ¶ 6.
- The x-rays showed a fracture and revealed an incidental finding of osseous lytic lesion; a bone cyst was suspected.  MSJ, Todd Dec. ¶ 3; MSJ, Heatley Dec. ¶ 6.
- Defendant Todd noted that on March 6, 2009, defendant Zachariah had completed an RFS for orthopedic consultation; defendant Todd ordered a follow up in 30 days.  Compl. at 5-6; MSJ, Todd Dec. ¶ 3; MSJ, Heatley Dec. ¶ 6.
- Defendant Todd also renewed plaintiff's ibuprofen prescription for 90 days.  MSJ, Todd Dec. ¶ 3.
- On April 23, 2009, plaintiff was again seen by defendant Todd in the yard clinic and his condition was assessed as having worsened.  The April 30, 2009 scheduled orthopedic

---

[7] Defendant Zachariah asserts that although he signed an April 23, 2009 chart note in plaintiff's records, this simply signified a monthly review of defendant Todd's chart.  MSJ, Zachariah Dec. ¶ 9.

4

consultation appointment was deemed clinically appropriate.  Compl. at 6; Todd Dec. ¶¶ 4-5; Heatley Dec ¶ 7; ECF No. 55, Opposition, at 3.

- The following facts have previously been established with respect to the orthopedist Dr. Lovett:

    o On April 30, 2009, plaintiff was seen by Dr. Lovett who found that plaintiff had a fixed boutonniere deformity,[8] -50 degrees with a severe hyperextension deformity of the DIP[9] joint.

    o Plaintiff stated that he could live with the boutonniere deformity but not the unstable DIP joint because it created problems with his work, wearing gloves, etc.

    o Following an examination, Dr. Lovett recommended "open repair of [plaintiff's] boutonniere deformity."

    o He also determined that plaintiff would benefit from a DIP fusion,[10] plaintiff's "chief concern."

    o This procedure would have fused the DIP joint and allowed plaintiff to be able to grasp objects with his thumb and index finger without the DIP joint hyperextending.  Dr. Lovett noted that "[t]his will be lined up pending authorization."

    o Dr. Lovett was willing to perform the DIP fusion, but was unwilling to perform the open repair of the boutonniere deformity because it was more complex and not his specialty.

    o Plaintiff has conceded that Dr. Lovett's recommendation for surgery for the boutonniere deformity was correct.

See ECF No. 65 at 3-4.

- Although it was previously stated that the RFS was approved on May 5, 2009, records demonstrate that it was actually approved by defendant Smith on May 12, 2009.  ECF No. 45-1, Declaration of Dr. C. Lovett ¶ 15[11]; ECF No. 51-2, Smith Dec. ¶ 5.[12]

---

[8] A boutanniere deformity occurs when a tear in the tendon sheath, which looks like a buttonhole, causes the finger to be bent down at the middle joint and bent back at the end joint.
[9] The DIP joint refers to the distal interphalangeal joint, the joint closest to the fingertip.
[10] A DIP fusion fuses the DIP joint together in a straight position with buried wires or screws.
[11] In support of former defendant Lovett's separate motion for summary judgment.
[12] In a somewhat confusing chronology, Dr. Smith avers that he approved Dr. Lovett's April 30, 2009 request for the DIP fusion surgery on May 12, 2009 and Dr. Lovett's request for a post-operative consultation on May 5, 2009.  MSJ, Smith Dec. ¶ 5.

5

- On June 2, 2009, plaintiff was seen by P.A. Christian Carter in the yard clinic. Follow up appointments were appropriate as an RFS for orthopedic surgery had been approved. Follow up in 30 days was ordered. Compl. at 6; MSJ, Todd Dec. ¶ 6.
- Plaintiff's condition was assessed as stable that day. MSJ, Todd Dec. ¶ 6; ECF No. 55, Opp., at 3.
- On July 6, 2009, plaintiff was seen in the yard clinic by defendant Todd, who confirmed that the RFS for an orthopedic surgeon had been approved; she was advised scheduling at orthopedic office had been contacted and a surgery date was pending. Compl. at 6; MSJ, Todd Dec. ¶ 7; MSJ, Heatley Dec. ¶ 9.
- Defendant Todd also renewed Motrin for pain. MSJ, Todd Dec. ¶ 7; MSJ, Heatley Dec. ¶ 9.
- Defendant Todd ordered follow up within 30 to 60 days. MSJ, Todd Dec. ¶ 7.
- Dr. Lovett has declared that he only became aware of the May 2009 DIP fusion procedure approval in late July or early August and averred that had he received it earlier, the procedure would have been scheduled for some two or three weeks later. ECF No. 65 at 4.
- On August 26, 2009, plaintiff was seen in the yard clinic by P.A. Carter with a surgical date pending. Compl. at 6; MSJ, Todd Dec. ¶ 8; MSJ, Heatley Dec. ¶ 10.
- Plaintiff was assessed as stable on that day and doing well on Motrin, which was renewed. MSJ, Todd Dec. ¶ 8; MSJ, Heatley Dec. ¶ 10.
- Surgery with the orthopedist was scheduled for August 28, 2009. MSJ, Todd Dec. ¶ 9; MSJ, Heatley Dec. ¶ 11.
- It has been previously established that:
    - On August 28, 2009, Dr. Lovett's office contacted MCSP to cancel the DIP fusion procedure and refer plaintiff to the hand surgery department at the University of California at Davis (UC Davis) for an evaluation and treatment recommendation.
    - Dr. Lovett's plan was to perform the fusion procedure if the hand specialist at UC Davis determined that it was still appropriate.

6

- o Otherwise, Dr. Lovett intended to refer plaintiff to the specialist if a more complex procedure was recommended.
- o Dr. Lovett's referral to UC Davis was redirected to San Joaquin General Hospital (SJGH), where an appointment was scheduled for October 23, 2009.

ECF No. 65 at 4-5.

- On October 12, 2009, plaintiff was seen by medical staff in the yard clinic and plaintiff's scheduled referral appointment was deemed clinically appropriate. Compl. at 7.
- Plaintiff was found to be stable on October 12, 2009, a follow-up from 30-60 days was scheduled pending additional orthopedic scheduling at SJGH. MSJ, Todd Dec. ¶ 10; MSJ, Heatley Dec. ¶ 12; ECF No. 55 at 3.
- It has already been established that:
  - o On October 23, 2009, plaintiff was seen at SJGH by Dr. Carmelino Galang.
  - o At this time, Dr. Galang advised plaintiff that it was too late to repair his finger and that he could either live with the permanent deformity or have the two knuckles on that finger amputated.
  - o Living with the deformity would have made it necessary for plaintiff to take ibuprofen regularly, which plaintiff found to be ineffective.
  - o Plaintiff therefore chose amputation.

ECF No. 65 at 5.

- On December 14, 2009, defendant Todd saw plaintiff in the yard clinic. SJGH orthopedist Dr. Galang's recommendation for partial amputation was discussed. MSJ, Todd Dec. ¶ 12; MSJ, Heatley Dec. ¶ 14.
- Plaintiff decided to amputate rather than have an attempted surgical repair of his finger. Plaintiff's Dep. 57:9-12; MSJ, Todd Dec. ¶ 12.
- Defendant Todd submitted an RFS for surgical partial amputation of the right index finger for approval, which was approved by defendant Heatley on December 21, 2009. MSJ, Todd Dec. ¶ 12; MSJ, Heatley Dec. ¶ 14.
- On January 28, 2010, plaintiff received a second opinion from a Dr. Stephen Gaal at

7

1  SJGH and again indicated his choice for partial amputation of finger.  MSJ, Todd Dec. ¶
2  13; MSJ, Heatley Dec. ¶ 15.

- On February 9, 2010, plaintiff was seen in the yard clinic by defendant Todd; she wrote a second RFS for surgical services which was approved by defendant Heatley on February 16, 2010 and surgery at SJGH was scheduled for February 25, 2010.  MSJ, Todd Dec. ¶¶ 14-15; MSJ, Heatley Dec. ¶¶ 16 & 23.
- On February 24, 2010, the amputation surgery scheduled for February 25, 2010 at SJGH was cancelled and rescheduled and Motrin was continued.   MSJ, Todd Dec. ¶ 15; MSJ, Heatley Dec. ¶ 16.
- The surgery was rescheduled to May 13, 2010 because the surgeon had to leave the country on an emergency basis.  MSJ, Todd Dec. ¶ 15.
- On April 1, 2010, plaintiff was seen by non-party Dr. Tseng in the yard clinic to discuss plaintiff's inmate appeal regarding his right index finger injury.  Compl. at 4; MSJ, Todd Dec. ¶ 17; MSJ, Heatley Dec. ¶ 17.
- The scheduling of orthopedist visits, surgery scheduling, and surgical dates cancelled by Dr. Lovett and Dr. Galang were discussed.  MSJ, Todd Dec. ¶ 17; MSJ, Heatley Dec. ¶ 17.
- The 602 appeal was partially granted; surgery was pending.  Compl. at 4; MSJ, Compl. at 4; MSJ, Todd Dec. ¶ 17; MSJ, Heatley Dec. ¶ 17.
- The appeal response stated that scheduling by outside providers could not be controlled by CDCR.  Id.
- It also stated that CDCR was doing its best to in requesting the appointments.  MSJ, Todd Dec. ¶ 17; MSJ, Heatley Dec. ¶ 17.
- On May 13, 2010, plaintiff's finger was partially amputated at SJGH.  ECF No. 65 at 5.
- Plaintiff, right-handed and a carpenter, claims to be disabled and disfigured as a result of CDCR's alleged lack of timely and adequate medical care.  ECF No. 55 at 32.
- Plaintiff was at no time under the direct care and treatment of defendants Heatley and Smith; nor did these defendants have direct contact with him.  MSJ, Heatley Dec. ¶ 21;

8

1        MSJ, Smith Dec. ¶ 3.

2    • Defendant Heatley's involvement was limited to reviewing and approving the December
3        14, 2009 RFS.  MSJ, Heatley Dec. ¶ 22.
4    • Defendant Smith's involvement was confined to approval of several requests for services
5        submitted by physicians (one from Dr. Zachariah and two from Dr. Lovett) and monthly
6        review of physician assistant charts.  MSJ, Smith Dec. ¶¶ 3-5, 7.

## LEGAL STANDARDS

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically store information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary

judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation

omitted).

In applying these rules, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

On April 22, 2011 (ECF No. 13), the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). By order filed on July 12, 2012 (ECF No. 61), plaintiff was provided notice pursuant to Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), and granted more time to make additional evidentiary submissions.

## DISCUSSION

Defendants Soltanian, Zachariah, Todd, Smith and Heatley move for summary judgment on plaintiff's claims(s) that they demonstrated deliberate indifference to his medical needs. In the alternative, the remaining defendants claim entitlement to qualified immunity. It has already been established, and is now the "law of the case,"[13] that Dr. Lovett (the prison's in-house orthopedist) did not violate plaintiff's Eighth Amendment rights in his treatment of plaintiff's injured finger. See ECF Nos. 65, 67.

The gravamen of plaintiff claims is that medical treatment for his February 2009 finger injury was delayed for over a year, until May 2010, and that the delay caused him great pain, deprived him of the opportunity to have his finger deformity repaired, and left him with the Hobson's choice between amputation and living with a painful deformity. Compl. at 5, 7; Plaintiff's Dec. in Opp., ECF No. 57. Plaintiff argues that the remaining CDCR defendants did not timely convey the DIP fusion surgery approval to the orthopedist, ultimately resulting in his choice of partial amputation.

---

[13] Once a decision of law is made, the ruling becomes the "law of the case" and should not be changed absent clear error or changed circumstances. See United States v. Estrada-Lucas, 651 F.2d 1261, 1263-64 (9th Cir.1980). The "law of the case" doctrine provides that "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." United States v. Cuddy, 147 F.3d 1111, 1114 (9th Cir. 1998) (quoting United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997)).

The Eighth Amendment proscription against cruel and unusual punishment encompasses the government's obligation to provide adequate medical care to those whom it is punishing by incarceration. See Estelle v. Gamble, 429 U.S. 97, 103 (1976). In order to establish an Eighth Amendment claim based on inadequate medical care, plaintiff must show that the defendant was deliberately indifferent to his serious medical needs. See Helling v. McKinney, 509 U.S. 25, 32 (1993); Estelle, 429 U.S. at 106; McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir.1997). Deliberate indifference to the serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. See McKinney, 509 U.S. at 32; Estelle, 429 U.S. at 104; McGuckin, 974 F.2d at 1059.

A "serious" medical need arises if the failure to treat the plaintiff could result in further significant injury or the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104; McGuckin, 974 F.2d at 1059. Deliberate indifference may be manifested by the intentional denial, delay or interference with the plaintiff's medical care, or by the manner in which the medical care was provided. See Estelle, 429 U.S. at 104-05; McGuckin, 974 F.2d at 1059. However, the defendant must purposefully ignore or fail to respond to the plaintiff's pain or medical needs. See McGuckin, 974 F.2d at 1060. Thus, neither an inadvertent failure to provide adequate medical care, nor mere negligence or medical malpractice, nor a mere delay in medical care (without more), nor a difference of opinion over proper medical treatment, is sufficient to constitute an Eighth Amendment violation. See, e.g., Estelle, 429 U.S. at 105-06; Toguchi v. Chung, 391 F.3d 1051, 1058-60 (9th Cir. 2004): Jackson v. Mcintosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Shapley v. Nevada Bd. of State Prison Commissioners, 766 F.2d 404, 407 (9th Cir.1984).

Moreover, the Eighth Amendment does not require optimal medical care or even medical care that comports with the community standard of medical care. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." See Estelle, 429 U.S. at 106; see

also, e.g., Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir.1995); McGuckin, 974 F.2d at 1050; Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.1990).

As noted, it has been previously adjudicated that defendant Lovett did not act with deliberate indifference.  Thus, it is now the "law of the case" that none of defendant Lovett's actions or omissions, including cancellation of the DIP fusion surgery, violated plaintiff's Eighth Amendment rights.

Plaintiff contends that he suffered continuous pain from the time of his injury until the amputation, but the record demonstrates that plaintiff received pain medication throughout. Specifically, the record shows that defendants Soltanian, Zachariah and Todd prescribed medication for plaintiff's pain.  Plaintiff raises no genuine issue of material fact as to the care provided by defendants Soltanian and Zachariah.  Both of these defendants were involved in the early phase of medical response to plaintiff's injury.  On the day of the accident Dr. Soltanian tried to correct the deformity and to obtain a consultation with an orthopedic specialist.  It is undisputed that he ordered and reviewed x-rays of the injured finger, made a medical assessment, splinted and wrapped the finger, prescribed pain medication and ordered follow-up.

Plaintiff argues that he received no treatment for his injured finger and no orthopedic referral from defendant Zachariah.  ECF No. 62, Supplemental Opp., at 1.  The record, however, establishes otherwise.[14]  Defendant Zachariah, who saw plaintiff nine days after the injury, examined and assessed the finger, ordered more x-rays to be taken within a week, wrote an RFS for an outpatient initial orthopedic consultation, renewed plaintiff's ibuprofen prescription and told plaintiff to follow up with regard to the x-rays within two weeks.  There is no evidence that either Dr. Soltanian or Dr. Zachariah were involved in the care of plaintiff's finger injury beyond the initial evaluations and treatment they provided, and each provided for follow-up care. Plaintiff provides no evidence that anything they did or failed to do comes close to demonstrating

---

[14] See, Medical Records at ECF No. 51-3 at 14-15.

1  deliberate indifference. Drs. Soltanian and Zachariah are entitled to summary judgment.

2  Defendant Todd saw plaintiff five times. On March 20, 2009, she reviewed his x-ray results with him, updated him on the status of the RFS for orthopedic referral, renewed his ibuprofen prescription for 90 days and ordered a follow up in 30 days. On April 23, 2009, she assessed his condition as having worsened, and deemed clinically appropriate his orthopedic consultation scheduled for the following week later. On July 6, 2009, defendant Todd confirmed that the RFS for an orthopedic surgeon had been approved, was advised that the orthopedic office had been contacted regarding scheduling and a surgery date was pending, renewed Motrin for pain and ordered follow up within 30 to 60 days. On December 14, 2009, she and plaintiff discussed the recommendation of the orthopedist, Dr. Galang, for partial amputation with plaintiff opting for amputation. P.A. Todd also submitted for approval an RFS for the surgical partial amputation of the right index finger, which was subsequently approved by defendant Heatley. Finally, on February 9, 2010, defendant Todd wrote a second RFS for surgical services, approved by defendant Heatley on February 16, 2010, and surgery at SJGH was scheduled for February 25, 2010.

The undisputed facts demonstrate that neither defendant Todd nor any other moving defendant was responsible for the fact that corrective surgery did not occur prior to October 23, 2009, when Dr. Galang determined that it was no longer feasible. The record does not explain the approximately two month delay in conveying the May 2009 approval for the DIP fusion procedure to Dr. Lovett's office. Although defendant Todd was involved in plaintiff's care throughout the relevant period, plaintiff has not identified facts creating a triable issue regarding her responsibility for the delay. Moreover, the delay amounts at most to negligence and not intentional conduct. "[A]n inadvertent failure to provide adequate medical care cannot be said to constitute "'an unnecessary and wanton infliction of pain. . . .'" Estelle, 429 U.S. at 105-06. Summary judgment for defendant Todd should be granted.

Plaintiff's claims against defendants Heatley and Smith arise solely from their supervisory positions. Plaintiff presents no evidence that these defendants participated in his care and treatment beyond approving physician requests for services. Plaintiff references defendant

14

1  Heatley's signature in his medical records "approving something." Plaintiff's Dep. 61:23-62:9.
2  On December 21, 2009, Dr. Heatley approved PA Todd's RFS for a surgical consultation at
3  SJGH, and on February 16, 2010 he approved a second RFS for partial amputation of plaintiff's
4  right index finger. Heatley approved both of these requests acting in his capacity as chief medical
5  executive. MSJ, Heatley Dec. ¶¶ 22-23.[15]

6  Dr. Smith similarly approved, in his capacity as chief physician and surgeon, three
7  physician requests for services related to plaintiff's treatment in March and May of 2009.
8  Plaintiff concedes that he has no evidence that defendant Smith did anything wrong, but seeks to
9  implicate him for having "signed documentations knowing of my medical needs." Plaintiff's
10  Dep. 41:15-42:2.

11  There is no respondeat superior liability under § 1983. That is, a supervisor cannot be
12  found liable for the misdeeds of subordinates. See Monell v. Department of Social Servs., 436
13  U.S. 658, 692-94 (1978). Rather, a defendant must be shown under § 1983 to have subjected
14  plaintiff to the deprivation of a constitutional right by himself doing an affirmative act,
15  participating in the affirmative acts of another, or omitting to perform an act he is legally required
16  to do. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Plaintiff has identified no evidence
17  that Dr. Heatley or Dr. Smith had any contact with him, directed any of the medical decisions at
18  issue, or otherwise caused plaintiff to be subjected to an Eighth Amendment violation.
19  Accordingly, plaintiff has failed to raise a genuine issue of material fact regarding these
20  defendants' deliberate indifference to his finger injury. Summary judgment therefore should be
21  entered for defendants Heatley and Smith.

22  Because there is no genuine issue of material fact regarding plaintiff's Eighth Amendment
23  rights, the court need not reach defendants' qualified immunity argument.

## CONCLUSION

25  For all the reasons explained above, IT IS HEREBY RECOMMENDED that the motion

---

[15] To the extent defendant Heatley participated in the inmate appeal process, he reaffirmed a partial grant at the second level of plaintiff's complaint about the medical treatment for his finger injury. No constitutional right of plaintiff's is implicated. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).

1 | for summary judgment brought by defendants Soltanian, Zachariah, Todd, Heatley and Smith
2 | (ECF No. 51) be granted, judgment be entered for defendants, and this case be closed.
3 |     These findings and recommendations are submitted to the United States District Judge
4 | assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days
5 | after being served with these findings and recommendations, any party may file written
6 | objections with the court and serve a copy on all parties.  Such a document should be captioned
7 | "Objections to Magistrate Judge's Findings and Recommendations."  *Due to the exigencies of the*
8 | *court's calendar, there can be no extension of time for objections.*  Any response to the objections
9 | shall be served and filed within fourteen days after service of the objections.  The parties are
10 | advised that failure to file objections within the specified time may waive the right to appeal the
11 | District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
12 | DATED: August 27, 2013

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:009
trou3109.msj2

16